IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                          **Case No. 05-40070-01-RDR**

ALLEN R. LARABEE,

           Defendant.

## MEMORANDUM AND ORDER

Defendant is charged with possession of a firearm by a convicted felon and possession of a firearm by an unlawful user of illegal narcotics. This case is before the court upon defendant's motion to suppress. The court has conducted an evidentiary hearing upon the motion. The court shall grant the motion to suppress for the reasons which follow.

Defendant's motion seeks to suppress the evidence obtained from a search of an apartment in Fairview, Kansas on July 19, 2005 during the nighttime. The search was conducted by Brown County, Kansas sheriff's department officers pursuant to a warrant issued by a state district court judge. Defendant and his girlfriend, Heather Martinson, were present at the apartment when the search warrant was executed.

Defendant asserts that the search warrant was executed in an unreasonable fashion in violation of the Constitution for two reasons. First, defendant contends that there was no adequate justification for executing the search warrant at night. Second,

defendant contends that the search warrant was executed in contravention of constitutional knock and announce requirements.

Facts

Testimony in this matter was given by Deputy Sheriff Brian Everhart of the Brown County Sheriff's Department. Everhart has worked in the department for 14 years and has had considerable training and experience in drug law enforcement. He obtained information from a reliable informant that defendant was involved with a person suspected of dealing a large amount of methamphetamine in the Brown County area. Everhart was familiar with defendant from prior incidents involving damage to vehicles and driving with a suspended license. He had a pretty good hunch that, if given the chance, defendant might flee to avoid apprehension. Everhart did not mention this hunch when asking for a search warrant, and he did not apply for an arrest warrant in this case. Indeed, he did not arrest defendant after concluding the search in this case.

The information from the informant led Everhart to conduct a trash pull at defendant's apartment complex. He identified trash bags which he believed from the discarded mail they contained, held trash from defendant's apartment. Everhart found burned foil pieces and residue consistent with the use of methamphetamine in the trash bags. On the basis of the information Everhart obtained from the informant and the trash pull, he applied for a search

warrant from the state district court judge. The judge determined that there was probable cause to believe that evidence linked to the crime of possession of methamphetamine would be found in the apartment. A search warrant was issued. The warrant does not specifically authorize or prohibit a nighttime search. Under Kansas law, K.S.A. 22-2510 and K.S.A. 22-2506, a search warrant may be executed at any time of day or night within 96 hours of the issuance of the warrant.

The warrant was issued at approximately 5:00 p.m. Everhart testified that the search warrant was executed at approximately 11:10 p.m. He said it took that long to gather and coordinate the people needed to execute the warrant. Four deputy sheriffs participated in the execution of the warrant. Everhart testified that he did not anticipate this matter becoming a federal case.

Defendant's apartment was ground level and could be entered directly from the outdoors. According to Everhart, when the officers executed the search warrant they banged on the door and the side of the apartment with both fists while simultaneously shouting "Sheriff's Office - search warrant" three times. That took about four seconds. Then, they pried open the storm door of the apartment. That required about 10 to 15 seconds. Then, they kicked open the front door. That did not require much trouble. The officers damaged the storm door and the door jamb in the process of entering the apartment. Everhart estimated that it took

20 to 45 seconds to enter the apartment.  When the officers entered, defendant and Heather Martinson were present in the apartment not far (ten or fifteen feet) from the door.  Defendant made no effort to flee or destroy evidence.

The search produced some physical evidence of drug possession and some firearms, but no physical evidence of distribution. Defendant, however, did make a statement admitting to distributing methamphetamine in small quantities to three friends.

Nighttime execution

The constitutional limitations upon nighttime searches were discussed in U.S. v. Gibbons, 607 F.2d 1320, 1326-27 (10th Cir. 1979) (footnoted material omitted):

> The language of the Fourth Amendment explicitly sets out the requirements for a valid warrant.  There is, however, no specific provision on the time of day during which the warrant must be executed.  Nevertheless, the provision must be "construed in the light of what was deemed an unreasonable search and seizure when it was adopted."  Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543.  The Amendment itself spoke in terms of protection "against unreasonable searches and seizures" and it seems logical that the factor of a nighttime search is sensitively related to the reasonableness issue.
>
> At common law, prior to the adoption of the Bill of Rights there was a strong aversion to nighttime searches. Although aversion to nighttime intrusion has continued to the present, the focal point of contemporary antipathy has centered around the intrusion into the home.  As Justice Frankfurter stated in his concurring and dissenting opinion in Monroe v. Pape, 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492 (1960): "Searches of the dwelling house were the special object of this universal condemnation of official intrusion.  Night-time search was the evil in its most obnoxious form."  This element

4

> of a nighttime intrusion is one element in considering the reasonableness of the search.
>
> While it is not controlling here, Rule 41, F.R.Crim.P. is a useful guide because it implements the essentials of the Fourth Amendment. <u>Jones v. United States</u>, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514. Rule 41(c) requires that the warrant be served "in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." Thus beyond the probable cause needed for every warrant, Rule 41(c) only requires that there be cause for carrying on the unusual nighttime search and that the issuing authority be convinced that it is reasonable under the circumstances. <u>United States v. Curry</u>, 530 F.2d 636, 637 (5th Cir.), <u>cert. denied</u>, 429 U.S. 829, 97 S.Ct. 89, 50 L.Ed.2d 93.  <u>See</u> <u>also</u> <u>United States v. Searp</u>, 586 F.2d 1117, 1121 (6th Cir.), <u>cert. denied</u>, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474.

The provisions of Rule 41(c) referred to in <u>Gibbons</u> are now part of Rule 41(e). Rule 41(e) of the Federal Rules of Criminal Procedure requires that a warrant be executed in the daytime "unless the judge for good cause expressly authorizes execution at another time." Of course, we understand that the warrant in this case was executed by state law enforcement officers who are not bound by Rule 41. Nevertheless, according to <u>Gibbons</u>, Rule 41 provides guidance regarding the constitutional question before the court.

More recently, in <u>U.S. v. Colonna</u>, 360 F.3d 1169 (10th Cir.) <u>cert. denied</u>, 543 U.S. 823 (2004), the court described the type of good cause which might justify the nighttime execution of a search warrant. Quoting the Supreme Court in <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394 (1997), the court noted that a no-knock entry must be justified by a reasonable suspicion of the police "that knocking

5

and announcing their presence under the circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of a crime by, for example, allowing the destruction of evidence."  Id. at 1176.  The court stated that "similar considerations justify the nighttime execution of a search warrant."  Id.  The court further commented that "the mere likelihood that drugs or weapons will be found at a particular premises does not justify a no-knock or nighttime execution of a search warrant."  Id. at 1176.

Even more recently, in U.S. v. Nielson, 415 F.3d 1195, 1200 (10th Cir. 2005), the court noted:

> Search and seizure cases involve, by their very nature, fact-dependent and case-specific inquiries.  Thus, our inquiry into whether exigent circumstances exist must rely on analogical reasoning from prior holdings and prior circumstances, as well as a close look at the particular circumstances law enforcement officers confronted in this case.  Following the Supreme Court, our prior holdings have focused on the criminal history and past violent behavior of the defendant as well as the conduct under investigation with particular emphasis on trafficking in narcotics with possession of a firearm.

The Tenth Circuit in Nielson affirmed this court's order granting a motion to suppress for failing to knock and announce during a nighttime search, although the case involved information that marijuana and an automatic weapon were present in the garage of the home and that four years earlier a loaded gun and marijuana had been found in the defendant's residence.  The Tenth Circuit reasoned:

> Without a prior history of violence in interacting with police, without a record of prior convictions that indicate a predilection towards violence, without a suspicion that defendant was engaged in narcotics trafficking, or without any other exigent circumstances such as children playing nearby or evidence of counter-surveillance activities, we cannot conclude that the police had sufficient justification in this case for a no-knock warrant.

Id. at 1201.

On the basis of the record before the court, we find nothing to distinguish this case from any case where a search warrant is issued to search for evidence of drug possession. There are no circumstances which generate a reasonable suspicion that this search would be dangerous to the officers involved or that the investigation would be inhibited if the officers decided to execute the search during daylight hours. Obviously, one could speculate that evidence of drug possession could be destroyed if there was notice of the search. That does not distinguish this case from most drug cases. Nor does it indicate that a nighttime search would be more effective than a daytime search. There was no prior history of violence; no evidence of drug trafficking while using or carrying a weapon; no danger to children; no concern with countersurveillance; and no substantial information of a threat of flight or destruction of evidence. The law of the Tenth Circuit as set forth above requires that the circumstances specifically support a nighttime or no-knock execution of a search warrant. The circumstances known to the court fail to justify a nighttime

execution of the search warrant in this instance.

### Knock and announce

The knock and announce rule which helps determine whether the execution of a search warrant is reasonable under the Fourth Amendment involves more than knocking or announcing prior to forcibly entering a residence. It also involves waiting to determine whether admittance is refused prior to breaking into an abode. The Tenth Circuit has held that ten to twelve seconds can be long enough to wait after knocking and announcing; it has also held that three seconds is an unreasonably short waiting period. U.S. v. Jenkins, 175 F.3d 1208, 1213 (10th Cir.) cert. denied, 528 U.S. 913 (1999) (reviewing cases). "[T]he reference point for the reasonableness determination is the amount of time between when the officers begin to announce their presence and when the officers hit the door with a battering ram or other implement which could destroy the door and allow them entry." U.S. v. McCloud, 127 F.3d 1284, 1288 n.2 (10th Cir. 1997).

In this case, the officers properly announced their presence and desire to be admitted. However, the officers did not wait a reasonable period of time after the announcement to determine whether their desire to enter had been refused. The testimony indicated that they began to force their way into the apartment as soon as they finished shouting "Sheriff's Department - search warrant" three times, and that it took only three or four seconds

to make that announcement.  As discussed in connection with the nighttime execution issue, there are no circumstances involved in this case which justify ignoring the knock and announce principles of the Fourth Amendment.  Based on the discussion set forth in the above-cited Tenth Circuit cases, as well as this court's holding in a similar case, <u>U.S. v. Holder</u>, 1999 WL 359908 (D.Kan. 1999), the court believes the search was executed in an unconstitutional manner.

Conclusion

The search warrant was executed in contravention of the Fourth Amendment because there was an inadequate justification for executing the warrant at night and because the officers did not wait a reasonable time to determine whether their request to enter the apartment was refused before forcibly opening the doors.  In addition, the officers damaged the entry to the apartment when they executed the warrant.  All of these factors lead the court to conclude that this was an unreasonable search under the Fourth Amendment.  The motion to suppress is therefore granted.

**IT IS SO ORDERED.**

Dated this 28th day of March, 2006 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge